1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| PHIL SAMPSON, representative of the Estate and Heirs of Dr. Lauren Sampson,<br><br>Plaintiff,<br><br>v.<br><br>FRESNO POLICE OFFICERS, GILLESPIE, KRAMER AND COOPER; CITY OF FRESNO and DOES 1 to 20, inclusive,<br><br>Defendants. | No.  1:20-cv-00322-DAD-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 6) |

19

This matter is before the court on defendants' motion (Doc. No. 6) to dismiss plaintiff's

20

complaint.  (Doc. No. 1-1.)  Pursuant to General Order No. 617 addressing the public health

21

emergency posed by the COVID-19 pandemic and the outbreak of the virus within this district,

22

defendants' motion was taken under submission on the papers.  (Doc. No. 11.)  For the reasons

23

set forth below, defendants' motion to dismiss will be granted in part and denied in part.

24

**BACKGROUND**

25

Plaintiff Phil Sampson originally filed his complaint in Fresno County Superior Court on

26

January 21, 2020 (Doc. No. 1-1 ("Compl.").)  Therein, plaintiff alleged that individual

27

defendants, Fresno Police Officers Gillespie, Kramer, and Cooper, responded to a call for service

28

to Dr. Lauren Sampson's apartment in Fresno, California on January 18, 2018.  (*Id*. at 6.)  Upon

arrival, the officers encountered a situation that made it clear that Dr. Sampson was a recent victim of domestic violence committed by her boyfriend Michael Guzman.  (*Id*.)  Dr. Sampson had reportedly been seen wandering around the apartment complex before the police were called.  (*Id.* at 10.)  Guzman would not open the locked apartment door for the officers after they first contacted Dr. Sampson outside, so Dr. Sampson used her key to open the door for them.  (*Id*.)  Once inside, the officers observed damage to the apartment and questioned Guzman, who admitted to grabbing Dr. Sampson's shoulders and also slamming a beer bottle down on the kitchen table.  (*Id*.)  A police report regarding the incident further stated that Dr. Sampson had blood on her clothing and face.  (*Id*.)  Dr. Sampson said that the altercation occurred because she was unwilling to give Guzman his keys because he was too drunk to drive.  (*Id*.)  According to plaintiff, the officers allegedly approached the situation with sexist disdain and a lack of concern for Dr. Sampson.  (*Id*. at 6.)  Two days later, Dr. Sampson was found dead, with a gunshot wound to the head after another violent and drunken altercation between her and Guzman.  (*Id*.)  The investigating officers ruled the death an attempted murder/suicide because Guzman also suffered a gunshot wound.  (*Id*. at 8.)

Plaintiff alleges that "[t]he investigators never did a thorough investigation, never conducted follow up interviews with family and friends of Lauren Sampson, and they took Michael Guzman's word at face value on key issues without ever investigating further."  (*Id*.)  Instead of providing Dr. Sampson with information, support, and resources that would have removed her from Guzman's control, plaintiff alleges that the individual defendants failed to arrest Guzman for destruction of property or domestic violence assault, failed to confiscate a loaded gun found inside of the apartment during the initial response call on January 18, 2018, failed to fully investigate the actions of Guzman in the days immediately prior to Dr. Sampson's death, and failed to provide Dr. Sampson with an emergency protective order.  (*Id*. at 6.)  Plaintiff Phil Sampson is the father of the decedent, Dr. Lauren Sampson.  (*Id.* at 51.)  Although not fully discernable from the complaint, plaintiff appears to allege equal protection, substantive due process, and *Monell* liability causes of action, all brought pursuant to 42 U.S.C. § 1983, as well as a deprivation of familial association cause of action.  (*Id*. at 6–7.)

1  On March 2, 2020, this case was removed by defendants from the Fresno County Superior

2  Court to this federal court pursuant to 28 U.S.C. § 1441(a) based upon federal question

3  jurisdiction under 28 U.S.C. § 1331.  (Doc. No. 1 at 2.)  On March 9, 2020, defendants filed the

4  pending motion to dismiss.  (Doc. No. 6.)  On April 21, 2020, plaintiff filed his opposition to the

5  motion to dismiss and on April 28, 2020, defendants filed their reply.  (Doc. Nos. 10, 12.)

6  **LEGAL STANDARD**

7  The purpose of a motion to dismiss brought pursuant to Rule 12(b)(6) is to test the legal

8  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

9  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

10  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

11  F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the

12  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

13  does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

14  a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

15  (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the

16  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

17  defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

18  In determining whether a complaint states a claim on which relief may be granted, the

19  court accepts as true the allegations in the complaint and construes the allegations in the light

20  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.

21  United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  It is inappropriate to assume that the plaintiff

22  "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways

23  that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of

24  Carpenters*, 459 U.S. 519, 526 (1983).

25  **ANALYSIS**

26  **A.    Standing**

27  Plaintiff must have standing under California's survival statute in order to pursue his equal

28  protection and due process claims on decedent's behalf.  *See Hayes v. Cty. of San Diego*, 736

3

1    F.3d 1223, 1228–29 (9th Cir. 2013) (citing Cal. Civ. Proc. Code § 377.30).  "A cause of action

2    that survives the death of the person entitled to commence an action or proceeding passes to the

3    decedent's successor in interest . . . and an action may be commenced by the decedent's personal

4    representative or, if none, by the decedent's successor in interest."  Cal. Civ. Proc. Code § 377.30.

5    Successors in interest are required to file an affidavit containing certain enumerated information

6    set forth in California Code of Civil Procedure § 377.32.  *See Alejandre v. Cty. of San Joaquin*,

7    No. 2:19-cv-233-WBS-KJN, 2019 WL 2355596, at *2 (E.D. Cal. June 4, 2019).  Plaintiff claims

8    that he is the decedent's successor in interest and therefore maintains standing to bring this suit.

9    (Doc. No. 10 at 2.)

10          Defendants argue that plaintiff is neither the decedent's personal representative nor the

11   decedent's successor in interest.  (Doc. No. 6 at 11.)  Instead, defendants contend that the

12   decedent's husband, Joseph Donabed, is the proper successor in interest, despite the fact that the

13   decedent and her husband were separated at the time the events giving rise to this civil action

14   occurred.  (*Id*.)  Defendants support this contention by arguing that "a cause of action acquired

15   during marriage is community property, and since any claim which [decedent] may have had

16   arose during her marriage, the presumption is that the proceeds from any such claim are

17   community property."  (*Id*.) (citing Cal. Fam. Code § 760).  Additionally, defendants argue that

18   plaintiff Phil Sampson lacks standing because as of the time that defendants removed this case

19   from state court, plaintiff had not filed the affidavit required by California Code of Civil

20   Procedure § 377.32.  (*Id*.)

21          In opposition to the pending motion, plaintiff argues that he is decedent's successor in

22   interest because any "beneficiary of an estate qualifies as a successor in interest under California

23   Code of Civil Procedure 377.11."  (Doc. No. 10 at 3.)  Moreover, plaintiff Phil Sampson contends

24   that the decedent's surviving spouse, Joseph Donabed, has relinquished his inheritance and

25   "[w]hen a surviving spouse disclaims his inheritance, the California Probate Code treats him for

26   most purposes as if he predeceased his spouse."  (*Id*. at 4) (citing Cal. Prob. Code § 282(a)).  As

27   such, plaintiff argues that "when a spouse dies without a living spouse and without any children,

28   the parents of the deceased are her rightful heirs."  (*Id*.) (citing Cal. Prob. Code § 6402(b)).

1    Plaintiff also argues that he has submitted a declaration under California Probate Code § 13100

2    that addresses all the same elements as the affidavit required by California Code of Civil

3    Procedure § 377.32 and that he has therefore met that requirement as well.  (*Id*. at 3 n.1.)[1]

4          In their reply, defendants argue that the complaint in this action contains no allegation that

5    the decedent's husband "formally 'disclaimed' any interest in his wife's estate or otherwise

6    assigned his interest in any cause of action his wife may have had at the time of her death. . .."

7    (Doc. No. 12 at 2.)  Defendants reiterate their argument that decedent's cause of action accrued

8    during her marriage and therefore is community property.  (*Id*.)  Finally, defendants contend that

9    plaintiff has essentially conceded that he failed to file the affidavit required by California Code of

10   Civil Procedure § 377.32.  (*Id*.)  Defendants argue that the affidavit filed pursuant to California

11   Probate Code § 13100 "is for the collection of a small estate without administration, and Plaintiff

12   has cited no authority that his affidavit may serve as a substitute for that required by *Cal. Code*

13   *Civ. Proc.* § 377.32."  (*Id*.)

14         The California Probate Code does treat a surviving spouse who disclaims his or her

15   inheritance as if that spouse predeceased the decedent.  *See* Cal. Prob. Code § 282(a); *United*

16   *States Small Bus. Admin. v. Bensal*, No. 13-cv-02263-WHO, 2014 WL 5527821, at *5 (N.D. Cal.

17   Oct. 31, 2014).  Under California law, when a spouse dies without a living spouse and without

18   any children, the parents of the deceased are her rightful heirs.  *See* Cal. Prob. Code § 6402(b);

19   *Raymond v. Martin*, No. 1:18-cv-00307-DAD-JLT, 2018 WL 2329244, at *4 (E.D. Cal. May 23,

20   2018).  In his complaint in this action, plaintiff alleges that the decedent's husband waived his

21   rights to any inheritance.  (Compl. at 51.)  Taking that allegation of fact as true, plaintiff would be

22   the decedent's successor in interest under the California Probate Code.  *See Tatum v. City and*

23   *Cty. of San Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006) (citing Cal. Civ. Proc. Code §§

24   377.30, 377.32).  At the pleading stage, of course, the court is to construe the allegations of the

25   complaint as true and in the light most favorable to plaintiff.  *See Hishon*, 467 U.S. at 73.

26   _____

27   [1]  Plaintiff appears to argue that he has standing because he asserts a familial association claim
     under 42 U.S.C. § 1983 instead of a wrongful death claim.  (Doc. No. 10 at 4.)  The argument is
     unpersuasive.  In their motion to dismiss defendants never argue that plaintiff's claims should be

28   dismissed as wrongful death claims.

Accordingly, the court concludes that plaintiff has adequately alleged that the decedent's husband waived his rights to any inheritance and that plaintiff's claims survive dismissal at this time on standing grounds.

As noted above, California law also requires that "any person seeking to commence a survival action under Section 377.30 execute and file an affidavit in compliance with California Code of Civil Procedure § 377.32." *Alejandre v. Cty. of San Joaquin*, No. 2:19-cv-233-WBS-KJN, 2019 WL 2355596, at *2 (E.D. Cal. June 4, 2019). Under § 377.32 a person who seeks to commence an action as the decedent's successor in interest shall execute and file an affidavit or a declaration under penalty of perjury stating all of the following:

(1) The decedent's name.

(2) The date and place of the decedent's death.

(3) "No proceeding is now pending in California for administration of the decedent's estate."

(4) If the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor in interest.

(5) Either of the following, as appropriate, with facts in support thereof:

(A) "The affiant or declarant is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in the action or proceeding."

(B) "The affiant or declarant is authorized to act on behalf of the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding."

(6) "No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding."

(7) "The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

Cal. Civ. Proc. Code § 377.32. The successor in interest must also file a certified copy of the decedent's death certificate. *See Ollison v. Alameda Health Systems*, No. 20-cv-04944-LB, 2020 WL 7227201, at *5 (N.D. Cal. Dec. 8, 2020).

1    Here, plaintiff attached an "Affidavit for Collection of Personal Property" to the

2    complaint.  (Compl. at 51.)  That affidavit, although filed under California Probate Code § 13100,

3    meets all the requirements listed in § 377.32.  The court therefore finds that plaintiff has

4    adequately pleaded that he is the successor in interest in this action.  However, plaintiff did not

5    file a certified copy of the decedent's death certificate.  Despite this deficiency, Dr. Sampson's

6    death is uncontested by the parties, and courts in this district have previously found that the

7    failure to file a death certificate does not prove fatal to a survival action.  *See Cotta v. Cty. of*

8    *Kings*, 79 F. Supp. 3d 1148, 1159 (E.D. Cal. 2015) (excusing plaintiff from filing a certified copy

9    of decedent's death certificate).  The court therefore concludes that plaintiff has adequately

10   alleged his standing to bring his claims on behalf of the estate of the decedent as her successor in

11   interest.[2]

12   **B.      42 U.S.C. § 1983 Claims**

13       The court interprets plaintiff's complaint as asserting that the defendants deprived the

14   decedent of her substantive due process and equal protection rights under the Fourteenth

15   Amendment.  Plaintiff also alleges a municipal liability claim brought pursuant to *Monell v.*

16   *Department of Social Services*, 436 U.S. 658 (1978).  The court will first examine whether

17   plaintiff has adequately pled a § 1983 claim against the individual defendants before turning to an

18   examination of the sufficiency of his *Monell* claim.

19       Section 1983 provides, in pertinent part:

20           Every person who, under color of any statute, ordinance, regulation,
             custom, or usage, of any State or Territory or the District of
21           Columbia, subjects, or causes to be subjected, any citizen of the
             United States or other person within the jurisdiction thereof to the
22           deprivation of any rights, privileges, or immunities secured by the
             Constitution and laws, shall be liable to the party injured in an action
23           at law, suit in equity, or other proper proceeding for redress.

24   42 U.S.C. § 1983.  The statute does not serve as an independent source of substantive rights;

25   rather it provides "a method for vindicating federal rights elsewhere conferred."  *Baker v.*

26   *McCollan*, 443 U.S. 137, 144 n.3 (1979).  Thus, "[t]o state a claim under § 1983, a plaintiff must

---

27   [2]  Should plaintiff decide to file an amended complaint, the court directs him to file a new
28   § 377.32 affidavit along with the normally required death certificate, but he need not do so
     otherwise.

1    allege the violation of a right secured by the Constitution and laws of the United States, and must

2    show that the alleged deprivation was committed by a person acting under color of state law."

3    *West v. Atkins*, 487 U.S. 42, 48 (1988).

4         1.    Equal Protection Claim

5         As an initial matter, it has been recognized that "there is no constitutional right to be

6    protected by the state against being murdered by criminals or madmen."  *Estate of Macias v. Ihde*,

7    219 F.3d 1018, 1028 (9th Cir. 2000) (quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.

8    1982)).  By the same token, individuals do have a constitutional right "to have police services

9    administered in a nondiscriminatory manner—a right that is violated when a state actor denies

10   such protection to disfavored persons."  *Id*. (citations omitted).  In bringing this action, plaintiff

11   contends, in essence, that the decedent's alleged assailant was not properly investigated by the

12   police because of the officers' bias against his victim, which in turn violated the Equal Protection

13   Clause.  *See Elliot-Park v. Manglona*, 592 F.3d 1003, 1006 (9th Cir. 2010).  Apparently in

14   support of this claim, plaintiff has attached to his complaint and incorporated a 13-page

15   investigative report prepared by a private service he hired to investigate this case.  (Compl. at 8-

16   20.)

17        To establish an Equal Protection Clause violation in the context of discriminatory

18   policing, a plaintiff must allege and prove that:  (1) defendants' enforcement of the law had the

19   effect of discriminating against members of the disfavored group/class; and (2) the police were

20   motivated by a discriminatory purpose.  *Rosenbaum v. City and Cty. of San Francisco*, 484 F.3d

21   1142, 1152 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

22        Defendants argue that plaintiff does not allege any facts that if proven would establish that

23   the decedent suffered any disparate treatment from Fresno's law enforcement officers in

24   comparison to similarly situated males or similarly situated victims of crimes other than those

25   involving domestic violence.  (Doc. No. 6 at 16.)  Defendants further argue that plaintiff does not

26   allege that the decedent suffered any disparate treatment because of the intent of a Fresno police

27   officer to discriminate against her "due to her sex/status as a victim of domestic violence."  (*Id*.)

28   /////

In opposition, plaintiff argues that his complaint, including all incorporated attachments, "certainly shows that domestic violence protocols were not followed" and that alone is sufficient to allow this action to proceed to discovery.  (Doc. No. 10 at 5.)  Plaintiff contends that he has alleged that the officers failed to follow California law in four different instances, as follows:  (1) failure to arrest Guzman despite his committing several crimes under California law, including destruction of property, spousal abuse, and misdemeanor domestic violence assault; (2) failure to confiscate the gun found inside the apartment on January 18, 2018 in violation of California Penal Code § 12028.5; (3) failure to offer the option of an emergency protective order to the decedent in violation of California Penal Code § 646.91; and (4) failure to fully investigate the actions of Guzman and failure to evaluate evidence which plaintiff argues evinced Guzman's violent domestic violence assault of the decedent the night of her death.  (Doc. No. 10 at 5.)  Plaintiff does not appear to be asserting separate state law claims in connection with these allegations.  Rather, he appears to list the alleged violations of state law in support of his § 1983 claims.  Plaintiff relies heavily on the fact that this court held a similar complaint to state a claim in *Motley v. Smith, et al.*, No. 1:15-cv-00905-DAD-BAM, 2016 WL 6988597 (E.D. Cal. Nov. 29, 2016).  (Doc. No. 10 at 5–6.)  Indeed, plaintiff incorporates the *Motley* complaint into his own complaint here.  (Compl. at 21.)  Because the undersigned in *Motley* found that cognizable equal protection claims had been alleged, plaintiff argues that the court should come to the same conclusion here.  (Doc. No. 10 at 6.)  Plaintiff appears to argue that the court should follow *Motley* under the "doctrine of intra-court comity" because the facts and allegations between the two cases overlap significantly and because both complaints alleged a pattern of disparate treatment of women by the Fresno Police Department.  (*Id*.) (citing *Fricker v. Town of Foster*, 596 F. Supp. 1353 (D.R.I. 1983)).

In their reply, defendants argue that "[i]t is neither Defendants' nor the Court's obligation to weed through the lengthy 'report' and guess what statements contained therein support the various theories of liability. . .."  (Doc. No. 12 at 3.)  Defendants further contend that here "there are only vague allegations that the defendant officers 'approached the situation with sexist disdain and laxity.'"  (*Id*. at 4.)  According to defendants, plaintiff makes no specific allegations in his

1   complaint that, if proven, would establish that the decedent suffered from any disparate treatment

2   or that any disparate treatment was provided due to the intent of the officers to discriminate

3   against the decedent based upon their animus toward her gender or status as a victim of domestic

4   violence.  (*Id*.)

5          In the body of his complaint plaintiff does not allege any specific facts explaining how the

6   defendant officers allegedly treated the decedent differently due to their animus toward her

7   gender or the fact that the crime alleged concerned domestic violence.[3]  However, as noted above,

8   plaintiff has also incorporated into his complaint a "detailed 13-page investigation report" from a

9   private service he hired to investigate this case, which does address this claim.  (Compl. at 8-20;

10  Doc. No. 10 at 6.)  The attached investigative report provides that on at least one occasion Sgt.

11  Benson and Detective Ledbetter, two of the officers responsible for investigating the decedent's

12  death, made comments that were derogatory and demeaning of the decedent and hinted at "an

13  animus against abused women."  *Balistreri*, 901 F.2d at 701–02 (holding that a cognizable gender

14  discrimination claim could be brought by a female domestic violence victim where the victim

15  alleged police denied protection and made misogynistic comments including that "he did not

16  blame [the victim's] husband for hitting her, because of the way she was 'carrying on'").  In

17  particular, here, plaintiff's complaint alleges that Detective Ledbetter called the decedent "white

18  trash," "a drunk," and told her parents that "God gave Lauren a test and she failed."  (Compl. at

19  12–13.)  Moreover, at a meeting between the officers, the private investigators, and the

20  decedent's family, plaintiff alleges that Sgt. Benson and Detective Ledbetter commented that

21  "Lauren learned a difficult lesson about choosing the wrong partner."  (*Id*. at 14.)  The officers'

22  comments that plaintiff alleges were made here are misogynistic because, just like the officer's

23  comments in *Balistreri*, they speak to a belief that women, through their personal choices,

24  somehow become more deserving of becoming victims of domestic abuse.  *See Motley v. Smith,*

25  *et al.*, No. 1:15-cv-00905-DAD-BAM, 2016 WL 3407658, at *8 (E.D. Cal. June 20, 2016).

26

27  [3]  The court agrees that plaintiff's complaint is difficult to sift through given its many
    attachments, as well as the lack of specificity with respect to each separate claim and the facts
28  being alleged in support thereof.

1    Accordingly, these allegations support plaintiff's contention that the denial of police protection

2    and investigation was motivated, at least in part, by gender-animus.  Because the court must

3    construe the allegations of plaintiff's complaint in the light most favorable to plaintiff, these

4    allegations, when considered with the incorporated allegations regarding the Fresno Police

5    Department (*see* Compl. at 39), are sufficient to allege a cognizable equal protection claim by

6    plaintiff based on gender discrimination.  Defendants' motion to dismiss plaintiff's equal

7    protection claim will therefore be denied.

8            2.      Substantive Due Process Claims

9            Plaintiff also alleges a substantive due process claim, apparently under a theory that the

10   officers placed the decedent "in a worse position than she otherwise would have been" and/or

11   "[emboldened] or [encouraged] the abuser's continued misconduct."  (Compl. at 6.)  Plaintiff's

12   interference with familial association claim also appears to be based on a substantive due process

13   theory.  (Doc. No. 10 at 4) ("Under 42 U.S.C. § 1983, this Circuit has made clear that parents –

14   even of married adults with children – may sue for denial of their rights to familial association.")

15   (citations omitted).  The court addresses each of these claims in turn below.

16                  a.      *The Danger Creation and Special Relationship Exceptions*

17           In response to the pending motion to dismiss, plaintiff appears to concede that he has

18   alleged insufficient facts to support *any* of his substantive due process theories of liability.  (*See*

19   Doc. No. 10 at 2.)  Nonetheless, the court will address these potential theories of liability in order

20   to avoid any confusion in the future litigation of this case.

21           "[A] State's failure to protect an individual against private violence simply does not

22   constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago Cty. Dep't of Soc.*

23   *Servs.*, 489 U.S. 189, 197 (1989).  This is because the purpose of the Due Process Clause is "to

24   protect the people from the State, not to ensure that the State protect[s] them from each other."

25   *Id.* at 196.  Therefore, an individual cannot bring an action against a state actor solely on the

26   grounds that his life, liberty, or property interests were harmed as a result of the state actor's

27   failure to protect the individual from the conduct of a third party.  *Johnson v. City of Seattle*, 474

28   F.3d 634, 639 (9th Cir. 2007) ("Because the City of Seattle had no constitutional duty to protect

                                                    11

1  the Pioneer Square Plaintiffs against violence from members of the riotous crowd, 'its failure to

2  do so-though calamitous in hindsight-simply does not constitute a violation of the Due Process

3  Clause.'") (quoting *DeShaney*, 489 U.S. at 202).

4       However, two exceptions to this general rule exist.  The first exception—"danger

5  creation"—provides that a government official may be liable under § 1983 if "state action

6  affirmatively . . . creates or exposes an individual to a danger which he or she would not have

7  otherwise faced."  *Id*. (citations and internal quotation makes omitted).  Under this exception, the

8  plaintiff must also allege and ultimately prove "that the [government] official . . . acted with

9  deliberate indifference to [a] known or obvious danger."  *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th

10  Cir. 1996).  "'Deliberate indifference' is a stringent standard of fault, requiring proof that a

11  municipal actor disregarded a known or obvious consequence of his actions."  *Kennedy v. City of

12  Ridgefield*, 439 F.3d 1055, 1064 (9th Cir. 2006).  The second exception—"special relationship"—

13  creates liability "when a custodial relationship exists between the plaintiff and the State such that

14  the State assumes some responsibility for the plaintiff's safety and well-being."  *Henry A. v.

15  Willden*, 678 F.3d 991. 1002 (9th Cir. 2012).

16       Turning first to the "danger creation" exception, a state actor cannot be held liable for

17  failing to mitigate an already existing dangerous situation not instigated by state action.  *See

18  Johnson*, 474 F.3d at 641 (police were not liable for failing to protect revelers because the police

19  conduct in question did not enhance the danger inherent to those participating in a Mardi Gras

20  celebration).  Again, the individual must allege and ultimately prove that "officers left [him or

21  her] in a situation that was more dangerous than the one in which they found him."  *Munger v.

22  City of Glasgow Police*, 227 F.3d 1082, 1086 (9th Cir. 2000).  Here, defendants argue that "there

23  are no allegations that the defendant officers 'affirmatively created an actual, particularized

24  danger' that Dr. Sampson otherwise would not have faced or that the officers left Dr. Sampson 'in

25  a situation that was more dangerous than the one in which they found' her."  (Doc. No. 6 at 20.)

26  Plaintiff does not dispute defendants' argument in this regard and the court concludes that

27  plaintiff has alleged no facts in his complaint suggesting that defendants placed the decedent in a

28  more dangerous situation than that in which they found her.  Accordingly, plaintiff has failed to

1 | state a cognizable substantive due process claim under the danger creation exception theory of
2 | liability.

3 | Next, the special relationship exception applies when "the state takes a person into its
4 | custody and holds him there *against his will*." *DeShaney*, 489 U.S. at 199–200.  By so limiting
5 | an individual's freedom, "the state has a duty to 'assume some responsibility for [the person's]
6 | safety and general well-being' because it has 'render[ed] him unable to care for himself.'"
7 | *Campbell v. State of Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 843 (9th Cir.
8 | 2011) (quoting *DeShaney*, 489 U.S. at 200).  A state's "knowledge of [a plaintiff's] plight and its
9 | expressions of intent to help"—absent some type of state-imposed limitation on that plaintiff's
10 | freedom—is not enough to give rise to the exception.  *Balistreri*, 901 F.2d at 700.  Defendants
11 | argue that plaintiff has not pled the existence of a special relationship between the decedent and
12 | the defendant officers.  (Doc. No. 6 at 17.)  Plaintiff does not dispute defendant's contention in
13 | this regard and, in fact, concedes as much.  (Doc. No. 10 at 2.)  There are no allegations in
14 | plaintiff's complaint that the decedent was taken into custody of any sort by the defendant
15 | officers or the Fresno Police Department that rendered her unable to care for herself.  Thus, the
16 | allegations of plaintiff's complaint are insufficient with respect to the existence of the required
17 | special relationship to support a substantive due process claim under this theory of liability as
18 | well.  Accordingly, the court will dismiss plaintiff's substantive due process claim without
19 | prejudice.

20 | b.  *Familial Association Claim*

21 | As noted above, plaintiff appears to assert an interference with familial association claim
22 | based upon a substantive due process theory as well.  (Compl. at 6.)  In bringing a substantive due
23 | process claim involving the alleged interference with familial association, one constant is always
24 | present:  the underlying cause of the deprivation is state action.  *See Wilkinson v. Torres*, 610 F.3d
25 | 546, 554 (9th Cir. 2010).  Here, defendants argue that plaintiff has not alleged that the state
26 | affirmatively interfered with the decedent's relationship with her parents.  (Doc. No. 6 at 22.)
27 | Plaintiff's complaint alleges that Guzman killed his daughter.  Again, plaintiff concedes that his
28 | /////

13

1  complaint fails to allege sufficient facts in support of his substantive due process familial

2  association claim.  (Doc. No. 10 at 2.)

3      For the reasons discussed above, the court will dismiss plaintiff's substantive due process

4  claims without prejudice.

5      3.    *Monell* Claim

6      Municipalities "may not be held vicariously liable for the unconstitutional acts of its

7  employees under the theory of respondeat superior."  *Gillette v. Delmore*, 979 F.2d 1342, 1348

8  (9th Cir. 1992).  Rather, for a municipality to be subject to damages liability under § 1983, a

9  plaintiff must allege and ultimately prove that an official municipal policy caused his or her

10  constitutional deprivation.  *Monell*, 436 U.S. at 691.  "Official municipal policy includes the

11  decisions of a government's lawmakers, the acts of its policymaking officials, and practices so

12  persistent and widespread as to practically have the force of law."  *Connick v. Thompson*, 563

13  U.S. 51, 60 (2011).  As the Ninth Circuit has stated:

14  
15  
16  
17  

> To impose liability on a local governmental entity for failing to act
> to preserve constitutional rights, a [§] 1983 plaintiff must establish:
> (1) that he possessed a constitutional right of which he was deprived;
> (2) that the municipality had a policy; (3) that this policy "amounts
> to deliberate indifference' to the plaintiff's constitutional right; and
> (4) that the policy is the 'moving force behind the constitutional
> violation."

18  *Oviat by and through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)

19  (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

20      Here, plaintiff incorporates the allegations of the complaint filed in *Motley v. Smith*, 1:15-

21  cv-00905-DAD-BAM in support of his municipal liability claim.  (Compl. at 7, 21.)  Therein,

22  plaintiff alleges "plaintiff[] [is] informed and believe[s] that the lax and offensive law

23  enforcement responses that Fresno residents frequently suffer in domestic violence cases are a

24  result of unwritten policies, practices, or customs of discrimination against women and

25  discrimination against victims of domestic violence."  (*Id.* at 45.)  In other words, plaintiff claims

26  the FPD had a longstanding practice or custom of denying female victims of domestic violence

27  equal protection under the law.

28  /////

14

1    "[A] municipality may be sued for 'constitutional deprivations visited pursuant to

2    governmental custom even though such custom has not received formal approval through the

3    [governmental] body's official decision-making channels.'" *Navarro v. Block*, 72 F.3d 712, 714

4    (9th Cir. 1995) (citing *Monell*, 436 U.S. at 690–91).  "Liability for improper custom may not be

5    predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

6    duration, frequency and consistency that the conduct has become a traditional method of carrying

7    out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  In this regard, the Ninth Circuit

8    has held that proof of two previous unconstitutional acts by individuals acting under color of state

9    law is insufficient to establish municipal liability.  *Meehan v. Cty. of Los Angeles*, 856 F.2d 102,

10   107 (9th Cir. 1988).

11          Here, through incorporation, plaintiff's complaint points to multiple incidents suggesting

12   the existence of a custom or practice of denying police protection to abused women because of

13   animus toward their gender or domestic situations.  (Compl. at 39–45.)  Plaintiff alleges that as

14   far back as 2008, the FPD has denied female domestic abuse victims full police protection.  (*Id*. at

15   42.)  Plaintiff has also provided in his complaint multiple examples in which FPD officers failed

16   to follow simple protocol while carrying out a domestic violence investigation.  For example,

17   according to the allegations of plaintiff's complaint, FPD officers failed to properly conduct

18   investigatory interviews, interviewing the male abuser before speaking with the female abuse

19   victim.  (*Id*. at 39–43.)  Plaintiff also alleges FPD officers engaged in a practice of failing to

20   document signs of abuse, such as refusing to photograph injuries suffered by female victims or

21   treating such injuries as having been self-inflicted.  (*Id.*)  These instances, coupled with plaintiff's

22   allegations that defendant officers made misogynistic comments to and about the decedent, are a

23   sufficient basis, if proven, upon which to reasonably infer the FPD had a custom or practice of

24   denying female domestic violence victims equal police protection because of animus toward their

25   gender.  That is all that is required.  Accordingly, defendants' motion to dismiss plaintiff's *Monell*

26   claim will be denied.

27   /////

28   /////

15

**CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss (Doc. No. 6) is granted in part and denied in part as follows:

 1.  Defendants' motion to dismiss is granted with respect to the following claims, which are dismissed without prejudice and with leave to amend being granted:

    a.  Plaintiff's claims for relief based upon substantive due process violations; and

    b.  Plaintiff's claim for relief for deprivation of rights to familial association.

 2.  Defendants' motion to dismiss is denied with respect to:

    a.  Plaintiff's claim for relief based upon an equal protection violation; and

    b.  Plaintiff's claim for relief based on municipal liability;

 3.  Within thirty (30) days from the date of service of this order, plaintiff is directed to either file an amended complaint or notify the court of his intention to proceed only on those claims found to be cognizable in this order.

IT IS SO ORDERED.

Dated: __**March 18, 2021**__     _____
                     UNITED STATES DISTRICT JUDGE